# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**EARL R. MAYFIELD,**

    **Petitioner,**

**v.**                                                                                                                            No. 17-cv-0891 MV/SMV

**GREG MORRIS, TOM RUIZ,**
**and STATE OF NEW MEXICO,**

    **Respondents.**

## MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before me on Petitioner Earl Mayfield's Fourth Amended Petition Pursuant to 28 U.S.C. § 2254, filed by his attorney on June 17, 2019.[1] [Doc. 21]. Respondents filed an answer on September 4, 2019. [Doc. 26]. Petitioner replied on November 8, 2019.[2] [Doc. 31]. The Honorable Martha Vázquez, United States District Judge, referred this matter to me for analysis and a recommended disposition. [Doc. 7]. Having considered the parties' submissions, the record, and the relevant law, and being otherwise fully advised in the premises, I find that Petitioner has failed to show that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established Federal law or were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254. Further, I find that under any standard of review, Petitioner's claims are without

---

[1] This "Supplemental Brief" is treated as Petitioner's Fourth Amended Petition, entirely supplanting the earlier, pro se petitions and amendments. *See* [Doc. 22] at 1 n.1 (citing [Docs. 1, 2, 8, 16]).
[2] Petitioner's Reply was untimely filed. He neither requested leave from the Court to file a late reply, nor did he comply with D.N.M.LR-Civ. 7.4(a). Respondents, however, have not indicated any objection to the Court's considering the untimely Reply, and thus, I consider it.

merit. Therefore, I recommend that the presiding judge deny the Petition and dismiss the action with prejudice. Next, I recommend that the presiding judge deny Petitioner's request that this Court "notify" the state district court that he or his attorney should have access to any *in camera* interview, [Doc. 31] at 1–2. Finally, I recommend that the presiding judge deny Petitioner's request for an evidentiary hearing. I do so for two reasons. First, the claims were adjudicated on their merits by the state courts. *See Cullen v. Pinholster*, 563 U.S. 170, 182–83 (2011). Second, no evidentiary hearing is needed because even if everything Petitioner alleges were borne out by evidence, his claims would still fail.

## **Background**

Petitioner was convicted on November 16, 2016, of trafficking a controlled substance.[3] [Doc. 27] at 205. Petitioner alleges that a "confidential informant, working in concert with law enforcement officers, at their direction and under their control, supplied [him] with a quantity of crack cocaine, for the sole purpose of selling it to a law enforcement officer working undercover." [Doc. 21] at 3–4. Apparently, he did then sell the crack cocaine to the undercover agent, and that sale formed the basis of his conviction. As he sees it, therefore, the crime for which he was convicted was "wholly created by law enforcement officers and agents under their direction and control, supplying the drugs, acting as seller and buyer, ensnaring [him] between two law enforcement officers or agents, solely for the improper purpose of putting him in prison." *Id.* at 1-2. At trial the judge instructed the jury on the defense of entrapment. [Doc. 27] at 199. Nevertheless, the jury found Petitioner guilty. *Id.* at 205. He was sentenced to 19 years of

---

[3] Petitioner was also convicted of tampering with evidence and resisting, evading, or obstructing an officer. [Doc. 27] at 205. He makes no challenge to these convictions. *See* [Docs. 21, 31].

incarceration. [Doc. 26-1] at 8; *see* [Doc. 21] at 1. The parties agree that Petitioner exhausted his state-court remedies. [Doc. 21] at 13–18; [Doc. 26] at 5.

## Standard For § 2254 Habeas Petitions

The provisions of § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case.[4] A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. The Court cannot grant habeas relief pursuant to § 2254(d) unless the decision in a petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d) (emphasis added). "Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The standard is "highly deferential" to state courts, and the Supreme Court has added that it is "difficult to meet," as it demands that state-court decisions be given the benefit of the doubt. *Pinholster*, 563 U.S. at 181 (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA] a federal court in a § 2254

---

[4] Because this Petition was filed after the effective date of the AEDPA, its standards apply to guide this Court's determinations. *See, e.g., Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons*, 531 F.3d 1306, 1319 (10th Cir. 2008).

proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

The term "clearly established Federal law . . . . refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405. The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id*. Therefore, habeas relief under § 2254 may be granted only where the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). Significantly, it is unnecessary for the state court to cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state decision makes an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court [applied] clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

Pursuant to AEDPA, state-court findings of fact are "presumed to be correct." § 2254(e)(1). Therefore, an application for a writ of habeas corpus that challenges a finding of fact must be dismissed unless the petitioner can show by clear and convincing evidence that the determination was factually erroneous. *Id.*; *Wiggins v. Smith,* 539 U.S. 510, 528 (2003).

Where the state courts adjudicated a claim on the merits, federal courts are limited to reviewing the record as it stood before the state courts. § 2254(d). That is, evidentiary hearings are not permitted in federal court on claims that the state courts decided on their merits. *Pinholster,* 563 U.S. at 182–83 (citing § 2254(d)(1)); *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted). Thus, summary decisions—even those completely devoid of any reasoning at all—can constitute decisions "on the merits" for purposes of AEDPA. *Richter*, 562 U.S. at 99.

"[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Finally, a court "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby, Connor, Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall*, 935 F.2d at 1110).

## Analysis

Petitioner is not entitled to habeas corpus relief on any of his claims. His entrapment claim is not cognizable under § 2254. His factual allegations—even if true—do not amount to

outrageous government conduct. Finally, his right-to-counsel claim is vague and conclusory. Thus, Petitioner fails to show that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* § 2254. In fact, under any standard of review, Petitioner's claims are without merit. His Petition should be denied.

## I. Entrapment/ Outrageous Government Conduct

Petitioner argues that his prosecution and conviction violate the federal constitutional guarantee of due process as protected in the Fourteenth Amendment, "under the outrageous government conduct doctrine, or objective entrapment." [Doc. 21] at 4. He urges that his crime was wholly created by law enforcement for the sole and illegitimate purpose of incarcerating him. *Id.* at 2, 3–9. Petitioner's position is that the state trial court's failure to "quash the prosecution" pursuant to *New Mexico v. Vallejos*, 1997-NMSC-040 "was a violation of due process." [Doc. 21] at 8. This claim is without merit.

### A. Entrapment

Petitioner's entrapment claim should be denied for numerous reasons. First, it is a state-law claim and, as such, cannot trigger federal habeas relief. Second, the fact that Petitioner refers to his state-law claim as "due process" does not change the result. Third, Petitioner's citations to cases in which entrapment was asserted as a defense to federal criminal charges ("federal entrapment") are not persuasive because even in the federal criminal system, entrapment does not trigger habeas relief. Fourth, even if federal entrapment could trigger habeas relief, Petitioner's allegations fail to show federal entrapment because Petitioner was already predisposed to

trafficking cocaine when he sold the crack rock to the undercover agent. The Petition should be denied.

Petitioner's claim rests on the New Mexico defense of entrapment. It is a state-law claim. Its nature as a state-law claim is evident in multiple ways. For example, Petitioner relies on a state-court case, i.e., *Vallejos*, as the lynchpin for his claim. [Doc. 21] at 8 (citing 1997-NMSC-040). Petitioner makes much about the federal cases cited in *Vallejos*, [Doc. 31] at 2, which he copied and pasted into his brief, *compare* [Doc. 21] at 6–7, *with Vallejos*, 1997-NMSC-040, ¶ 30.[5] But the *Vallejos* court explicitly relied on the state constitution—not the federal constitution—in making its decision. *Id.* ¶ 2 ("[W]e hold that entrapment . . . involves matters of due process under . . . the New Mexico Constitution."), *id.* n.2 ("[T]his decision is based entirely on state constitutional grounds."). Furthermore, Petitioner emphasizes that law enforcement had an "improper purpose," which was to imprison him. [Doc. 21] at 2, 4–6. The motivation of law enforcement is a relevant factor for the state-law defense of entrapment, but it is not relevant under federal law. *Compare Vallejos*, 1997-NMSC-040, ¶ 19 ("Police also violate due process [under the New Mexico state constitution] when they ensnare a defendant in an operation guided by an illegitimate purpose."), *with, e.g., United States v. Hampton*, 425 U.S. 484, 488 (1976) ("[T]he entrapment defense [in the federal system] focuses on the intent or predisposition of the defendant to commit the crime, rather than upon the conduct of the Government's agents." (internal brackets, quotation marks, and citation omitted)). Accordingly, Petitioner's repeated arguments about the

---

[5] *Compare* [Doc. 21] at 5, *with Vallejos*, 1997-NMSC-040, ¶¶ 19–20; *compare* [Doc. 21] at 7–8, *with Vallejos*, 1997-NMSC-040, ¶ 32.

purpose and motivation of law enforcement show that his argument rests on state law rather than federal law.

For these reasons, I find that Petitioner's entrapment claim arises from state law and, as such, does not show a denial of a federal constitutional right. *See Vega v. Suthers*, 195 F.3d 573, 583 (10th Cir. 1999) (holding that the defense of entrapment raises questions of state law only and cannot trigger habeas relief). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67–68; *see* § 2254. Petitioner's entrapment arguments do not entitle him to federal habeas relief. His petition should be denied.

Petitioner urges that his entrapment claim is cognizable in the federal-habeas context because it violates his right to due process as guaranteed by the federal constitution. [Doc. 21] at 4. I disagree. Petitioner cannot turn his state-law claim regarding the defense of entrapment into a cognizable federal-habeas claim by labeling it "due process."

> A habeas applicant cannot transform a state law claim into a federal one merely by attaching a due process label. *See Gryger v. Burke*, 334 U.S. 728, 731 (1948). Otherwise, "every erroneous decision by a state court on state law would come [to federal court] as a federal constitutional question." *Id.*; *see Onyx Props. LLC v. Bd. of Cty. Comm'rs*, 838 F.3d 1039, 1044 (10th Cir. 2016); *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997) ("Errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."). Rather, the habeas applicant should "include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle [him] to relief." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996); *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004) (explaining the applicant must "draw[] enough of a connection" between the right to due process and the

8

sentencing court's alleged errors "to render his claim cognizable on habeas review").

*Leatherwood v. Allbaugh*, 861 F.3d 1034, 1043 (10th Cir. 2017) (brackets in original).

To successfully argue that a state-law error violated the federal constitutional guarantee of due process, a habeas petitioner would have to show that the error was "fundamentally unfair." *Id.* As discussed more fully in the section addressing outrageous government conduct, *infra*, nothing in Petitioner's allegations, even if true, would be so fundamentally unfair as to implicate federal due process. *See id.* ("A prisoner may seek relief, however, if a state law decision is so fundamentally unfair that it implicates federal due process."); *Estelle*, 502 U.S. at 67–68, 75 (asking whether the state-law error "so infused the trial with unfairness as to deny due process of law"). This is particularly true in Petitioner's situation because the trial-court judge instructed the jury on state-law entrapment,[6] [Doc. 27] at 199 (jury instruction number 13), even though Petitioner had withdrawn the entrapment defense prior to trial, [Doc. 27] at 141 (Defendant's Notice of Withdrawal of 5-508(b) Notice of Entrapment Defense). Thus, even assuming the

---

[6] The instruction read:

> Evidence has been presented that government agents exceeded the bounds of permissible law enforcement conduct.
> Permissible law enforcement conduct is exceeded if government agents supplied controlled substances to the defendant and then obtained the same controlled substances from the defendant.
> "Government agents" include law enforcement officers or persons acting under their direction, influence or control.
> The burden is on the state to prove to your satisfaction beyond a reasonable doubt that government agents did not exceed the bounds of permissible law enforcement conduct.
> If you have a reasonable doubt as to whether the government agents exceeded the bounds of permissible law enforcement conduct, you must find the defendant not guilty.

[Doc. 27] at 199.

circumstances were as described by Petitioner, the failure of the state-court judge to "quash" his prosecution was not fundamentally unfair.

Lastly, Petitioner cites several federal-court decisions on the federal defense of entrapment. [Doc. 21] at 4–5, 6–7. None of these cases helps Petitioner. In the federal system, the defense of entrapment requires a showing not only that (1) the government induced the defendant to commit the crime but also that (2) the defendant was not otherwise predisposed to committing it. *United States v. Nguyen*, 413 F.3d 1170, 1178 (2009); *see Hampton*, 425 U.S. at 488 ("[T]he entrapment defense focuses on the intent or predisposition of the defendant to commit the crime, rather than upon the conduct of the Government's agents." (brackets and citation omitted)). Of course, the federal defense of entrapment does not apply here because Petitioner was not tried or convicted in federal court. But even if the federal defense applied, Petitioner would not be entitled to relief for two reasons. One, Petitioner fails to argue, much less show, that he was not predisposed to trafficking cocaine. In fact, the record shows the opposite. Petitioner had a substantial criminal history including numerous arrests and convictions for trafficking cocaine prior to his arrest in this case. [Doc. 27] at 9–11, 56–57; *see* [Doc. 31] at 7–8. This history of trafficking cocaine shows that Petitioner was already predisposed to selling cocaine to the undercover agent. Therefore, even if Petitioner had been prosecuted with a federal crime, the defense of entrapment would not have been available to him. Two, the federal defense of entrapment is not cognizable as a habeas claim. *See United States v. Russell*, 411 U.S. 423, 433 (1973) (holding that the defense of entrapment "is not of a constitutional dimension"). Thus, even if Petitioner could show entitlement to the federal

defense of entrapment, which he cannot, he would not be entitled to habeas relief because entrapment is not of a constitutional dimension. His Petition should be denied.[7]

## B. Outrageous Government Conduct

The defense of outrageous government conduct is distinct from the defense of entrapment in that the entrapment defense looks to the state of mind of the defendant to determine whether he was predisposed to commit the crime for which he was prosecuted, whereas the outrageous conduct defense looks at the government's behavior. *United States v. Mosley*, 965 F.2d 906, 909 (10th Cir. 1992). When the government's conduct during an investigation is sufficiently outrageous, the courts will not allow the government to prosecute offenses developed through that conduct. *Id.* at 908. A defendant may challenge such conduct by means of the outrageous conduct defense, which is predicated on the Due Process Clause. *Id.* at 908–09. It "is an extraordinary defense reserved for only the most egregious circumstances." *Id.* at 910.

The defense of outrageous government conduct has two requirements, government creation of the crime and substantial coercion. *United States v. Sneed*, 34 F.3d 1570, 1577 (10th Cir. 1994) (citing *Mosley*, 965 F.2d at 911).[8] Here Petitioner's allegations, even if true, fail to show either requirement. The Court addresses them in order of analytical convenience.

---

[7] Relatedly, Petitioner argues that his ability to assert a viable entrapment defense was "thwarted by the prosecution's destruction of . . . the only existing audio recording of an interview with a law enforcement officer involved in the sham drug transaction." [Doc. 21] at 8. To the extent that Petitioner intends to assert this as an independent habeas claim, *see id.* at 3, it is conclusory and underdeveloped. It is unclear what claim Petitioner intends to raise, if any. He cites no caselaw or other legal authority. This claim, to the extent there is any, is waived. *See Garrett*, 425 F.3d at 840–41 (a brief "must contain . . . more than a generalized assertion of error[ and must contain] citations to supporting authority. When a . . . litigant fails to [cite to authority], we cannot fill the void by crafting arguments and performing the necessary legal research.").

[8] Petitioner refers repeatedly in his opening brief to his position that law enforcement was "guided by an illegitimate purpose" or an "improper purpose." [Doc. 21] at 5, 2. For this proposition, Petitioner cites to state-court opinions from New Mexico, West Virginia, Missouri, and New York. *Id.* at 5, 8. He cites no federal authority. *See* [Doc. 21]. Petitioner fails to show that this factor is relevant to my analysis. I have searched in vain for any Supreme Court or

11

First, Petitioner fails to allege—much less show—that he was substantially coerced into selling crack cocaine to the undercover agent. In fact, nothing in Petitioner's allegations could be interpreted as showing coercion at all. Because substantial coercion is required to establish outrageous government conduct, and because Petitioner alleges no coercion at all, his claim fails. His Petition should be denied.

Second, Petitioner's factual allegations (even if true) fail to show government creation of the crime. He alleges that a "confidential informant, working in concert with law enforcement officers, at their direction and under their control, supplied [him] with a quantity of crack cocaine, for the sole purpose of selling it to a law enforcement officer working undercover."[9] *Id.* at 3–4. Based on this scant version of events, Petitioner concludes that the cocaine sale for which he was convicted was "wholly created" by law enforcement. *Id.* at 3. Petitioner offers no legal support for his conclusion that these facts amount to government creation of the crime.

Petitioner cites numerous cases that recognize the outrageous conduct defense in the abstract. [Doc. 21] at 4–5, 6–8. For example, Petitioner cites to *Russell* for the proposition that "police tactics may offend our notions of fundamental fairness and [be] so outrageous that 'due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.'" *Id.* at 3 (quoting *Russell*, 411 U.S. at 431–32). He cites another Supreme Court case for the proposition that "police conduct violates due process when it shocks the conscience." *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). He cites *Mosley* to argue that "excessive involvement by the police in creating the crime constitutes unconscionable police

---

Tenth Circuit case referring to an illegitimate or improper purpose or motive. Accordingly, I do no analyze whether law enforcement in Petitioner's situation had an illegitimate purpose.

[9] This is as much specificity as Petitioner provides. This is not a summary; this is the entirety of his version of the facts. *See* [Docs. 21, 31].

12

methods." *Id.* at 4–5 (citing *Mosley*, 965 F.2d at 910–12)). These cases and the others cited by Petitioner show that outrageous government conduct can be a defense. Yet, Petitioner provides no support for his conclusion that the facts in *his* case qualify for the defense. Petitioner fails to discuss or describe the facts of any precedent case, and critically, he makes no effort whatsoever to compare the facts of any precedent case with his own. He argues exclusively in general terms about the abstract existence of the defense but fails entirely to discuss how the facts of his crime should trigger the defense.

The precedent cases are not in his favor. I have found no case in which the Supreme Court or the Tenth Circuit applied the Due Process Clause to invalidate a conviction for outrageous government conduct. *See Stamps v. Miller*, 763 F. App'x 686, 695 (10th Cir. 2019). Not one. Nor does Petitioner give any example of such a case—from any federal court anywhere.[10] *See* [Docs. 21, 31].

The most relevant guidance I have found is that "the government can suggest the illegal activity, can provide supplies and expertise for the activity, and can act as both supplier and buyer in sales of illegal goods in order to induce the defendant to repeat, continue, expand, or extend the criminal activity." *Sneed*, 34 F. 3d at 1577 (citing *Mosley*, 965 F.2d at 911–12). Considering Petitioner's undisputed history of trafficking cocaine, this language suggests to me that the government's conduct, as alleged by Petitioner, was not outrageous.

The Tenth Circuit has also described a relevant hypothetical circumstance on the other end of the spectrum. The court speculated that "if a government agent entered a drug rehabilitation

---

[10] I am aware of only two circuit court decisions setting aside convictions for outrageous government conduct: *United States v. Twigg*, 588 F.2d 373, 379 (9th Cir. 1978) and *Greene v. United States*, 454 F.2d 783, 786–87 (9th Cir. 1971). These cases are distinguishable from the case at bar because they are both direct appeals of federal convictions, whereas the instant case attempts to invoke habeas relief to undo a state-court conviction.

13

treatment center and sold heroin to a recovering addict, and the addict was subsequently prosecuted for possession of a controlled substance, the outrageous government conduct defense might properly be invoked." *United States v. Harris*, 997 F.2d 812, 818 (10th Cir. 1993). Petitioner's situation, as he alleges it, is nowhere close to the hypothetical situation in *Harris*.

Petitioner's version of the facts fails to meet either requirement for the outrageous-government-conduct defense. He does not allege that he was coerced into selling crack cocaine. Nor does he provide any legal authority to support his view that the facts here (even as he alleges them) constitute "government creation of the crime." More to the point, though, I have found no case in our circuit in which a state-court conviction was overturned based on outrageous government conduct, and Petitioner's conviction—even on the facts as he alleges them—does not warrant his being the first. His Petition should be denied.

## II. Right to Counsel

Petitioner argues that he was denied the "right to counsel" when the trial court refused to allow his trial attorney to withdraw. [Doc. 21] at 13. Petitioner argues that the trial-court judge should have allowed his trial counsel to withdraw for two reasons. One, their relationship had irretrievably eroded prior to trial. Two, if the attorney had been allowed to withdraw, the attorney would have been free to testify as a witness about an interview with a law-enforcement officer regarding the "sham drug transaction." *Id.* at 8–9. Petitioner complains that the trial-court judge would not appoint a new attorney or permit him to represent himself. *Id.* at 9. Petitioner complains that the trial-court judge did not hold any hearing on the motion to withdraw, at which he alleges that he could have "presented evidence to provide factual support for the motion" or where Petitioner's "ability to represent himself could have been tested." *Id.* Finally, Petitioner argues

that "his more limited right to counsel of choice was violated." *Id.* at 13. To support his position, the sole legal authority Petitioner cites is *Faretta v. California*, 422 U.S. 806 (1975). I am not persuaded.

Petitioner fails to show that his right to counsel was violated. He had an attorney, and he fails to explain how his "right to counsel" was violated considering that he had an attorney. *See* [Docs. 21, 31]. The argument is without merit.

Petitioner fails to show that his right to self-representation was violated. He references *Faretta* and says that he was not permitted to represent himself, [Doc. 21] at 9, but that is as far as he goes, *see* [Docs. 21, 31]. He does not discuss any of the circumstances of his request to represent himself or of the denial of his request. He does not discuss *Faretta* at all; he does not even provide a pin cite. Even if I accept Petitioner's factual allegations as true, they do not show any violation of Petitioner's rights under *Faretta*. For example, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [of representation by an attorney]." *Faretta*, 422 U.S. at 835. Petitioner does not allege that his request to represent himself was knowing and intelligent, nor could I draw such an inference from the facts he does allege. He does not explain why his request was denied, or how such denial violated *Faretta*. The argument is conclusory and without merit.

Petitioner fails to show that his trial counsel was constitutionally ineffective. As an initial matter, I find any claim for ineffective assistance of counsel is waived because it was not raised until the reply brief. *Compare* [Doc. 21] at 2, 9–13 (petition's section on "right to counsel," with no mention of ineffective assistance), *with* [Doc. 31] at 9–10 (reply's referencing "ineffective assistance" for the first time).

Alternatively, Petitioner's claim for ineffective assistance of counsel should be denied because Petitioner does not allege that his attorney was ineffective, nor does he allege that he suffered any prejudice *as a result* of his attorney's performance. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that in order to establish a claim of ineffective assistance of counsel, a petitioner must demonstrate: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense). Petitioner's allegations (even if true) do not show any error by his attorney and do not show any prejudice resulting from his attorney's performance. Rather, Petitioner's complaint is that trial judge should have allowed his attorney to withdraw so that the attorney could testify in support of Petitioner's entrapment defense. [Doc. 21] at 9–10; [Doc. 31] at 9–10. Petitioner's grievance is "the state trial court's denial of his meritorious motion to allow trial counsel to withdraw so that Petitioner . . . could call trial counsel as a witness to key facts regarding his outrageous government conduct/due process defense." [Doc. 31] at 9–10. This is not a challenge to his attorney's performance. And to the extent Petitioner argues that his attorney was "conflicted" due the deterioration of their relationship, he still does not allege that his attorney's performance was lacking or that he was prejudiced as a result of his attorney's performance. [Doc. 21] at 11. He devotes an entire page of argument to the abstract principle that "when the attorney-client relationship breaks down, one of the pillars of our system of criminal justice crumbles." *Id.* But he does not allege any error on his attorney's part or that he suffered any prejudice as a result of his attorney's performance. Regardless of how it framed, Petitioner's claim regarding his "right to counsel" is without merit. The Petition should be denied.

## Conclusion

Petitioner fails to show that the state courts' decisions on his claims were contrary to, or involved an unreasonable application of, clearly established Federal law or were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254. Further, I find that under any standard of review, Petitioner's claims are without merit. Therefore, I recommend that the Petition be denied and the action be dismissed with prejudice. Next, I recommend denying Petitioner's request that this Court "notify" the state district court that he or his attorney should have access to any *in camera* interview, [Doc. 31] at 1–2. Finally, I recommend denying Petitioner's request for an evidentiary hearing because (1) the claims were adjudicated on their merits by the state courts, *see Pinholster*, 563 U.S. at 182–83, and (2) even if they were not, no evidentiary hearing is needed because even if everything Petitioner alleges were borne out by evidence, his claims would still fail.

**IT IS THEREFORE RESPECTFULLY RECOMMENDED** that Petitioner's counseled Fourth Amended Petition Pursuant to 28 U.S.C. § 2254 [Doc. 21] be **DENIED** and that this case be **DISMISSED with prejudice**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**